28 F.3d 851
 Jon C. SHARPS, Appellant,
v.
UNITED STATES FOREST SERVICE; United States Department of
Agriculture; Robert G. Childress, District Ranger, Fall
River District of the Nebraska National Forest; Butch
Ellis, Acting Forest Supervisor, Nebraska National Forest;
Gary E. Cargill, Regional Forester, Rocky Mountain Region;
F. Dale Robertson, Chief of the United States Forest
Service, United States Department of Agriculture, Appellees.
 No. 93-2424.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 18, 1994.
Decided July 5, 1994.
 
 James Floyd Margadant, Rapid City, SD, argued, for appellant.
 Robert Aaron Mandel, Rapid City, SD, argued, for appellees.
 Before McMILLIAN, WOLLMAN and MAGILL, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Jon C. Sharps appeals from a final judgment entered in the United States District Court[1] for the District of South Dakota dismissing his amended complaint which sought injunctive relief against the United States Forest Service and individual Forest Service officers (Forest Service). For reversal, Sharps argues the district court erred in dismissing his amended complaint for failure to state a claim upon which relief could be granted. For the reasons discussed below, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 The Nebraska National Forest, a part of the National Forest System, is located in northwest Nebraska and southwest South Dakota. The Buffalo Gap National Grasslands is a subdivision of the Nebraska National Forest located in South Dakota and managed as part of the National Forest System. 36 C.F.R. Sec. 213.1(b). The western half of the Buffalo Gap National Grasslands is administered by the Fall River Ranger District.
 
 
 3
 In August 1989 a decision notice was issued by the Forest Supervisor for the Nebraska National Forest which amended the Nebraska National Forest's Land & Resource Management Plan of 1984 (LRMP) and altered the manner in which the black-tailed prairie dogs were managed in the forest. The August 1989 decision, among other things, contemplated a consolidation of prairie dog colonies and a one-mile buffer zone between the colonies and private or Indian lands adjacent to the Nebraska National Forest. Prior to finalizing the August 1989 decision, the Forest Supervisor for the Nebraska National Forest ordered an Environmental Assessment (EA) to be prepared pursuant to the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. Sec. 4321 et seq., to analyze the environmental effects of the suggested changes. The EA concluded with a finding of no significant impact, thus precluding the preparation of an Environmental Impact Statement (EIS).[2]
 
 
 4
 Also prior to finalizing the August 1989 decision, the Forest Supervisor for the Nebraska National Forest created a public involvement group to identify public concerns, of which Sharps, a wildlife biologist, was a member. The public involvement group developed several alternatives, and, ultimately, it unanimously recommended to the Forest Supervisor one of their alternative proposals (Alternative 7). On August 17, 1989, Alternative 7 was adopted by the Forest Supervisor as the management plan for the black-tailed prairie dog in the Nebraska National Forest. Sharps did not administratively appeal this final August 1989 decision.
 
 
 5
 In October 1990 a decision memorandum was published by the District Ranger for the Fall River Ranger District which established a district plan to bring the Fall River Ranger District into compliance with the final August 1989 decision. In November 1990 Sharps administratively appealed the October 1990 decision pursuant to 36 C.F.R. Sec. 217 et seq. The Forest Supervisor upheld the October 1990 decision, and Sharps filed a second-level administrative appeal which was denied by the Regional Forester. The Chief of the Forest Service declined to exercise discretionary review of the Regional Forester's decision. See 36 C.F.R. Sec. 217.17.
 
 
 6
 In September 1991 Sharps filed a complaint in federal district court seeking to enjoin the Forest Service from enforcing the prairie dog management plan. Sharps alleged that the August 1989 decision notice, and accompanying October 1990 decision memorandum implementing the August 1989 decision, violated NEPA, the National Forest Management Act of 1976 (NFMA), Endangered Species Act, 16 U.S.C. Sec. 1531 et seq., Bald and Golden Eagle Protection Act, 16 U.S.C. Sec. 668 et seq., Migratory Bird Treaty, 16 U.S.C. Sec. 703 et seq., and Administrative Procedures Act, 5 U.S.C. Sec. 706(2) (APA). The Forest Service filed a motion to dismiss and motion for summary judgment. The district court dismissed the complaint because it alleged claims based upon the August 1989 decision, and Sharps had failed to exhaust administrative remedies with respect to that decision. Because Sharps had administratively appealed the October 1990 decision, the district court allowed Sharps to amend his complaint to state claims based solely upon the October 1990 decision memorandum. Sharps filed an amended complaint alleging the October 1990 decision memorandum violated NEPA, NFMA, and APA.
 
 
 7
 The Forest Service filed a motion to dismiss the amended complaint asserting that Sharps lacked standing to challenge the October 1990 decision, and that Sharps's amended complaint failed to state a claim upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). The district court, finding that Sharps had standing to sue, nevertheless dismissed the amended complaint for failure to state a claim upon which relief could be granted 823 F.Supp. 668. This appeal followed.
 
 II. DISCUSSION
 
 8
 Sharps argues on appeal that the district court erred in dismissing his amended complaint for failure to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). Sharps's amended complaint alleged that the October 1990 decision memorandum, which established a district plan for bringing the Fall River Ranger District into compliance with the August 1989 decision, violated NEPA, NFMA, and APA.
 
 
 9
 We review Rule 12(b)(6) motions to dismiss de novo. Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir.1993) (citing Wells v. Walker, 852 F.2d 368, 369-70 (8th Cir.1988), cert. denied, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989)). Like the district court, we assume that all the facts alleged in the complaint are true. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). Because Sharps alleged claims in his amended complaint which arise out of the August 1989 decision memorandum, for which he failed to exhaust administrative remedies, we hold the district court did not err in dismissing Sharps's amended complaint.
 
 
 10
 Sharps's original complaint, which challenged the August 1989 decision notice by the Forest Service to alter the management of prairie dogs in the forest, was dismissed for failure to exhaust administrative remedies. Courts have long required a litigant seeking review of agency action to exhaust available administrative remedies prior to seeking judicial review. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); United States v. Bisson, 839 F.2d 418 (8th Cir.1988) (Bisson ). Such a rule is based on principles of sound judicial administration. See, e.g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-464, 82 L.Ed. 638 (1938). The exhaustion doctrine guarantees administrative autonomy and efficiency, and ensures that administrative agencies are afforded an opportunity to address their own errors without judicial intervention. See Madsen v. Department of Agriculture, 866 F.2d 1035, 1038 (8th Cir.1989) (Madsen ).
 
 
 11
 In the present case, the administrative remedy available to Sharps was to initiate an appeal of the August 1989 decision notice at any time within forty-five days of the date of the decision notice. 36 C.F.R. Sec. 217.8(a)(2). Sharps did not institute an administrative appeal of the August 1989 decision notice at any time during the forty-five-day appeal period, and filed his original complaint in federal district court on September 14, 1991, more than two years after the decision notice was issued.
 
 
 12
 A review of the record reflects that Sharps's interests in immediate judicial review do not outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to advance. See Madsen, 866 F.2d at 1038. This is particularly so in light of the substantial amount of time invested in reaching the new prairie dog management plan and the fact that Sharps was a member of the public involvement group which unanimously proposed Alternative 7, which was ultimately incorporated into the August 1989 decision notice. The record reveals no evidence that Sharps was denied an opportunity to appeal the August 1989 decision notice. By contrast, Sharps had detailed, first-hand knowledge of the substantive changes in prairie dog management brought about by the August 1989 decision notice and the time at which the decision would become final. Under these circumstances, no sound reason existed for the district court to waive the exhaustion requirement. See Bisson, 839 F.2d at 420 (district court's refusal to consider merits of counterclaim was justified where no good reason was shown for failure to exhaust available administrative remedies).
 
 
 13
 Sharps argues that he stated a claim under NEPA in his amended complaint because he alleged the Forest Service did not follow the procedures mandated by NEPA in its October 1990 decision memorandum and the August 1989 decision notice to which it is "tiered". A close examination of Sharps's amended complaint and pleadings reveals that Sharps's NEPA claims are nothing more than an attempt to circumvent the exhaustion requirement applied to his original complaint challenging the August 1989 decision notice.
 
 
 14
 After issuance of the August 1989 decision notice, the Fall River Ranger District was required to consolidate existing prairie dog colonies and provide for the maintenance of a one-mile buffer zone between colonies and private or Indian lands. Sharps's amended complaint alleged that the October 1990 decision memorandum, calling for those measures, would adversely affect the habitat of species associated with the prairie dog and thus the Forest Service was required under NEPA to compile environmental data and prepare an EIS.
 
 
 15
 We believe that the NEPA claim asserted in Sharps's amended complaint does not challenge the October 1990 decision memorandum, but rather challenges the underlying August 1989 decision notice. Sharps's NEPA claim challenging the October 1990 decision memorandum, which merely created a district plan for implementing the August 1989 decision notice in the Fall River Ranger District, is derivative of the August 1989 decision notice. Sharps's concerns could easily have and should have been raised in an administrative appeal of the August 1989 decision notice. Sharps's NEPA claim fails to show how the October 1990 decision memorandum presents environmental concerns not already identified and considered in the August 1989 decision notice. As already discussed, the exhaustion doctrine bars Sharps from attacking the August 1989 decision notice. To allow Sharps to circumvent the exhaustion doctrine through an appeal of the October 1990 decision memorandum would frustrate the goals of the exhaustion doctrine. Thus, Sharps's NEPA claim was properly dismissed.
 
 
 16
 Sharps also argues that his amended complaint stated a claim under NFMA. Sharps alleged that the October 1990 decision memorandum violated NFMA because it implemented the August 1989 decision notice which violated NFMA. Like the NEPA claim discussed above, this NFMA allegation is merely an attempt to circumvent the exhaustion doctrine.
 
 
 17
 Sharps's amended complaint also alleged that the October 1990 decision memorandum violated NFMA, and regulations promulgated thereto, because it did not provide for maintenance of viable populations of certain species as mandated by 16 U.S.C. Sec. 1604 and 36 C.F.R. Sec. 219.10, .27 (1992).[3] However, as the district court found, the regulations cited by Sharps apply only to areas within the National Forest System which are covered by a "regional guide or forest plan." See 36 C.F.R. Sec. 219.3, .4. The October 1990 decision memorandum established a district plan to bring the Fall River Ranger District into compliance with the August 1989 decision notice. Because the October 1990 decision memorandum is a district plan, not a forest plan or regional guide, the sections cited by Sharps are inapplicable to the October 1990 decision memorandum.
 
 
 18
 Sharps further argues that his amended complaint stated a claim under the APA, which requires that agency action must comply with the procedures required by law, because the October 1990 decision memorandum allegedly violated NEPA and NFMA. Sharps's claim under the APA is derivative of his claims asserted under NEPA and NFMA and thus must fall with those claims.
 
 
 19
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Richard H. Battey, United States District Judge for the District of South Dakota
 
 
 [2]
 If, as a result of the EA, the agency determines that its project will significantly affect the environment, then an EIS must be prepared. 40 C.F.R. Sec. 1501.4. However, if, after preparing the EA, the agency makes a finding of no significant impact, then the agency need not prepare an EIS. 40 C.F.R. Sec. 1501.4
 
 
 [3]
 Sharps's amended complaint also alleged that the October 1990 decision memorandum violated NFMA by failing to comply with 36 C.F.R. Sec. 219.36. As the district court found, no such regulation exists