Linda GREGSON and Tom
McKinney, Plaintiffs,

v.

U.S. FORESTRY SERVICE, Lynn Neff,
Forest Supervisor, Ozark–St. Francis
National Forest, Robert Joslin, Regional
Forester, U.S. Forestry Service, and
George Rogers, District Ranger, Defendants,

v.

ARKANSAS FORESTRY ASSOCIATION,
Ozark–St. Francis National Forest Renewable Resources Council, and Bibler
Brothers, Inc., Intervenors.

No. LR–C–97–1004.

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 21, 1998.

Dale W. Finley, Richard H. Young, Young & Finley, Russellville, AR, for Plaintiffs.

Searcy W. Harrell, Jr., Harrell & Lindsey, P.A., Camden, AR, for intervenors.

Kenneth F. Stoll, U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for Defendants.

*MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT*

EISELE, District Judge.

Before the Court are defendants' and intervenors' separate Motions for Summary Judgment. The movants contend that, based upon the Administrative Record below, they are entitled to judgment as a matter of law in this action arising under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 ("APA"); the National Forest Management Act, 42 U.S.C. § 4321, *et seq.* ("NFMA"); National Environmental Policy Act, 16 U.S.C. § 1600, *et seq.* ("NEPA"); and the Land Resource Management Plan for the Ozark–St. Francis National Forests. The Court has reviewed the parties' submissions, and for the reasons set forth below will grant defendants' motion for summary judgment and will dismiss as moot intervenors' motion for summary judgment. Thus, the administrative decision below will be affirmed.

## I. BACKGROUND

Situated in Northwest Arkansas, the Ozark National Forest contains over 1.1 million acres of National Forest System land. In 1986, the United States Forest Service ("the Forest Service") produced a Land Resource Management Plan ("LRMP") for the Ozark–S. Francis National Forests. An Environmental Impact Statement ("EIS") was prepared, and a Record of Decision ("RD") was issued on July 29, 1986. Administrative Record ("AR"), Part B., Vol. 1, Tabs 1 & 3. Waldo Mountain is located within the Ozark National Forest. On January 17, 1997, the District Ranger for the Bayou Ranger District of the Ozark–St. Francis issued a notice of a proposed project called the Waldo Mountain Timber Sale and Wildlife Habitat Improvement Project (the "Waldo Project"). AR, Part A, Tab 1. The Forest Service proposed the harvesting and sale of timber, the commercial thinning of pine areas, as well as other activities within a 26,680 acre area known as the Waldo Mountain Landscape. Plaintiff Tom McKinney was mailed a copy of the Waldo Mountain Landscape Analysis Report and related scoping materials. AR, Part A, Tabs 3 & 7. Plaintiff Linda Gregson was not mailed these materials.

A comment period followed, after which the Forest Service prepared an Environmental Assessment ("EA") containing its proposed action and four alternative courses of action (which included a "no action" alternative). AR, Part A, Tab 13. The Waldo Project EA is 118 pages, and it contains over 80 pages of appendices. On May 9, 1997, a copy of the EA was sent to interested individuals, including Mr. McKinney, and a legal notice was published in the *Russellville Courier Democrat* on May 11, 1997. AR, Part A, Tab 16.

On June 19, 1997, after a 30 day comment period, the District Ranger entered a Notice of Decision ("DN") and a Finding of No Significant Impact ("FONSI"), which means that an EIS was not prepared for the Waldo Project. In the end, the District Ranger opted to implement *Alternative IV* from the EA, which was not its preferred alternative.

On August 7, 1997, plaintiff McKinney filed a Notice of Appeal pursuant to 36 C.F.R. § 215, *et seq.* AR, Part A, Tab 30. Plaintiff Gregson did not file an administrative appeal. The Appeal Deciding Officer for the Department of Agriculture for the most part rejected Mr. McKinney's Appeal and issued an eleven page decision. AR, Part A, Tab 39. The Deciding Officer concluded "that the District Ranger has adequately addressed the issue you raised in your [notice of appeal] in the EA and DN/FONSI on the Waldo Mountain timber sale project except for the issue (Issue 7) of consultation with the [United States Fish and Wildlife Service].... I find that the environmental effects disclosure in the EA is appropriate and adequate for this project and supports the District Ranger's conclusion that the selected actions will not have a significant impact on the quality of the human environment." *Id.* at 39–11.

Plaintiffs challenge the Forest Service's implementation of the Waldo Project on the Bayou Ranger District of the Ozark National Forest, seeking judicial review of the Forest Service's decision to implement the Project. First Am. Pet. for Inj. Relief ¶¶ 5—13. They contend that the Project violates the NEPA and the NFMA. *Id.* ¶ 2. And they seek "to enjoin the Forest Service from timber sales

and logging until it remedies the violations of law and inadequacies [set forth in the Complaint.]" *Id.* ¶ 1.

Plaintiffs seek a declaratory judgment establishing that defendants' approval of the Project is unlawful under the NFMA, the NEPA, and relevant regulations. Plaintiffs further seek an Order "enjoining all further activity pursuant to Defendants' approval of [the Project] including the awarding of any timber sale contracts, the felling, yarding and removal of trees, the construction or closing of any roads, and other activities." *Id.*, page 25. On May 4, 1998, the Court granted the intervenors' petition to intervene in this action as party defendants.

Defendants contend they are entitled to summary judgment for several reasons. First, they contend that plaintiff Gregson entirely failed to exhaust her administrative remedies prior to bringing this action. Defendants further assert that Mr. McKinney impermissibly seeks to raise issues not raised during his administrative appeal. Finally, based upon the Administrative Record ("AR") below, defendants claim that the Deciding Officer's decision should be upheld as a matter of law on the remaining NFMA and NEPA claims. Intervenors have also filed motions for summary judgment, focusing primarily on the merits of plaintiffs' case. Because the Court is granting summary judgment based upon the arguments advanced by the defendants, the Court need not formally rule on the intervenors' motion for summary judgment.

## II. ANALYSIS

### A. Standard of Review and Record on Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment should be granted so long as whatever is before the Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Review of final agency action under the NEPA and NFMA is governed by the APA, which directs a reviewing court to affirm final agency action unless that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The ultimate standard of review is a narrow one, and the Court is not empowered to substitute its judgment for that of the agency. Instead, it is to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 416, 91 S.Ct. 814; *Newton County Wildlife Ass'n. v. Rogers,* 948 F.Supp. 50, 51 (E.D.Ark.1996), *aff'd* 141 F.3d 803 (8th Cir.1998)(citing *Collins Securities Corp. v. FDIC,* 145 B.R. 277, 283 (E.D.Ark.1992)). Furthermore, the Court generally must confine its review to the administrative record and issues presented to, and considered by, the agency. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

The Court has reviewed the three volume Administrative Record in light of the Deciding Officer's decision and plaintiffs' petition for injunctive relief. It is clear that the Administrative Record in this case is more than sufficient to permit the Court to resolve the legal issues raised in defendants' motion for summary judgment. Thus, the Court rejects plaintiffs' argument that "[d]iscovery is not complete and no depositions have been scheduled" and that "there is no way for either party to make a complete argument to the court to allow the court to make an informed decision." If the agency record is not adequate, the proper procedure is to remand the case for additional investigation. *Newton County Wildlife,* 141 F.3d at 807. Because the record is ample, remand for further proceedings is not necessary. The Court further concludes that there has been no showing of bad faith or improper behavior which would justify discovery or

evidentiary supplementation of the Administrative Record. *See id.*

### B. Linda Gregson Has Failed to Exhaust Administrative Remedies

■ A reviewing court must refuse to conduct an APA review when a plaintiff has failed to exhaust her administrative remedies. *Darby v. Cisneros,* 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993); *Sharps v. United States Forest Service,* 28 F.3d 851 (8th Cir.1994). And the Forest Service has established mandatory appeal procedures. *See* 36 C.F.R. § 215, *et seq.* Before implementation, proposed national forest land and resource management plans, as well as proposed timber harvests, require a "notice and comment" procedure. *Id.* § 215.3(a) & (b). Section 215.5(b)(1) requires publication in a newspaper of general circulation. Section 215(b)(2)(i) & (ii) require that notice be sent to persons who have requested it or who are known to have "participated in the environmental analysis process" or "in the decision-making process."

Before enacting a project, the Forest Service must address comments made during a 30 day comment period. *Id.* § 215.6(d). After a project is decided upon, only individuals who have "provided comment or otherwise expressed an interest in particular proposed action by the close of the comment period" may participate in the administrative appellate procedure. *Id.* § 215.11(a). Resort to federal court for judicial review is premature absent exhaustion of an individual's administrative remedies. *Id.* § 215.20.

Defendants contend that Linda Gregson did not file comments on the proposed Waldo Project. Furthermore, she did not administratively appeal the project decision. Defendants assert, therefore, that she is not entitled to obtain judicial review in the instant action. Linda Gregson does not dispute that she did not participate in the administrative process. However, without citation to supporting authority, she contends that she was not provided adequate notice so that she could have so participated. "Adequate notice must be given in order to participate in the administrative review process," Gregson asserts. She goes on, "[o]ne legal notice in the

local newspaper is not sufficient and that was all there was."

■ The Court concludes that the Forest Service complied with the notice and comment requirements of 36 C.F.R. § 215.3–.6. Notice was sent to those who had requested notice, and notice was published in the *Russellville Courier Democrat.* Although publication for one day may not constitute broad notice, the law does not require more. If Ms. Gregson had wanted to assure herself of notice of proposed forest projects, she could have requested that the Forest Service provide her notice, but she did not. Had she requested notice and not received it, perhaps her position would have merit.

Ms. Gregson does not dispute that she in fact did not participate in the administrative appeal process. Defendants have cited the unpublished Memorandum Opinion of United States District Judge William L. Standish from the Western District of Pennsylvania. *Kleissler v. United States Forest Service,* No. 97–2187 (W.D.Penn. May 27, 1998). Therein, Judge Standish concludes that 7 U.S.C. § 6912(e) and 36 C.F.R. § 215.20 clearly mandate exhaustion of administrative remedies prior to seeking judicial review in federal court. *Id.* at 14. Eighth Circuit cases have similarly required exhaustion before proceeding in Federal Court. *See* discussion, *infra.* Therefore, Ms. Gregson is barred from maintaining this action, and summary judgment is proper as to her participation in this action.

### C. Tom McKinney Failed to Exhaust Administrative Remedies on Certain NFMA Issues

Defendants concede that Tom McKinney participated to some extent in the administrative appeal process. However, defendants argue that Mr. McKinney seeks judicial review of legal issues not raised below. Thus, they contend they are entitled to summary judgment on the issues not pursued during the administrative appeal process.

In his administrative appeal below, McKinney asserted that the Waldo Project violated the NFMA, the NEPA, the Wild & Scenic Rivers Act, the Clean Water Act, the Endan-

gered Species Act, and the Migratory Bird Act. In this action, McKinney raises only claims related to the NEPA and NFMA.

Below, McKinney alleged three violations of the NFMA. First, he claimed that the Waldo Project violated 16 U.S.C. § 1604(g)(3)(E), by not "ensur[ing] that timber will be harvested only from lands where 'soil, slope or other watershed conditions will not be irreversibly damaged,' and where streams are protected from 'detrimental changes in water temperatures, blockages of water courses, and deposits of sediment.'" AR, Part A, Tab 30 at 10. Citing pages 49 through 59 of the EA, the Appeal Deciding Officer rejected this argument. AR, Part A, Tab 39 at 5.

Second, McKinney alleged violations of 16 U.S.C. § 1604(g)(3)(b) and 36 C.F.R. § 219.19, which involve the diversity of plant and animal communities in the affected area. The Appeal Deciding Officer rejected this challenge at pages 5 and 6 of her decision, concluding that the District Ranger had provided a detailed ecosystem analysis. The Officer further noted that the EA and Biological Evaluation had adequately considered the Project's effects on "rare elements." *Id.* at 6.

Finally, McKinney lodged a challenge to the Waldo Project based upon its impact on the visual quality of the area. The Officer concluded that the EA did not violate the NFMA regarding visual quality. *Id.* at 6–7. In arriving at this conclusion the Officer considered several sections of the Waldo Mountain Landscape Analysis which focused on visual quality within the Project.

■ Now, in his First Amended Petition for Injunctive Relief, plaintiff raises additional violations of the NFMA. *See* Am. Pet. for Inj. Relief ¶¶ 67(c)—(h). In these paragraphs, plaintiff raises claims regarding the implications of clearcutting (¶ 67(c)); multiple-use issues (¶ 67(d)); the economic and environmental aspects of various systems of renewable resource management (¶ 67(e)); the growth of tree stands (¶ 67(f)); public

participation in the implementation of land management plans (¶ 67(g)); and the restocking of lands after harvest (¶ 67(h)). Failure to raise these issues at the administrative level has deprived the proper agency the opportunity to make an appropriate factual record. *Sierra Club v. Robertson,* 784 F.Supp. 593, 598 (W.D.Ark.1991); *aff'd* 28 F.3d 753 (8th Cir.1994). To the extent any of these six claims seek to raise issues not raised before the Appeal Deciding Officer, the Court concludes that they must be dismissed due to plaintiff's failure to exhaust his administrative remedies. To the extent that they raise issues arguably coextensive with the points addressed by the Deciding Officer, the Court will address those points below.

**D. The Merits of Tom McKinney's Remaining Claims**

*1. NFMA claims*

The Court will now consider the three NFMA claims which were raised at the administrative level. As enumerated above, these issues were raised and briefed before the proper administrative authority. The Appeal Deciding Officer took up and rejected each argument. Essentially, the Officer concluded that the Project's EA adequately addressed plaintiff's concerns and that there had been no violations of the NFMA. The Court has reviewed the Deciding Officer's decision, and the relevant portions of the record cited therein.

■ The Forest Service's decisions are presumptively correct on areas in which the Service has expertise. *Volpe,* 401 U.S. at 415, 91 S.Ct. 814. In light of the cases addressing NFMA challenges,[1] the Administrative Record clearly indicates that the Ranger District adequately contemplated the Project's impact on soil erosion, water quality, plant and animal diversity, and visual quality. The Court *cannot* conclude that the Hearing Officer's decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." In fact, the Officer's decision appears quite sound. Thus, the Court must affirm the Deciding

---

**1.** *See e.g., Newton County Wildlife Ass'n v. Rogers,* LR–C–95–673 (E.D.Ark. Feb. 12, 1997)(noting that a plaintiff challenging an agency's decisions must demonstrate that methodologies or choices were irrational); *Robertson,* 784 F.Supp. 593 (W.D.Ark.1991).

Officer's decision and grant summary judgment in defendants' behalf on the three remaining NFMA claims.

### 2. NEPA claims

First, plaintiff contends that defendants violated the NEPA by failing to prepare an EIS for the Project. Plaintiff contends an EIS was required because the Waldo Project could have a significant effect on the human environment in several ways. Am. Pet. for Inj. Relief ¶ 69(a). Next, plaintiff asserts that the Project fails to explore "numerous serious possibilities of injury to fish and wildlife which might result from logging the timber." *Id.* ¶ 69(b). Finally, plaintiff asserts that the EA prepared by defendants presents a biased analysis of, and otherwise fails to consider, certain environmental costs, such as recreation and reforestation. *Id.* ¶ 69(c).

The scope of review of an agency decision under the NEPA is a narrow one, with the Court simply determining whether the Forest Service took a "hard look" at the relevant factors and reached a decision that was neither arbitrary nor capricious. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). Administrative appeal challenges brought pursuant to the NEPA are limited to addressing whether the agency complied with the NEPA's procedural mandates. *Robertson,* 784 F.Supp. at 604.

#### a. The Necessity of Preparing an EIS for the Waldo Project

The NEPA requires all federal agencies to prepare an EIS for "all major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). If the agency decides based upon its preparation of an EA not to prepare an EIS, it makes and publishes a finding of no significant impact ("FONSI"). 40 C.F.R. § 1501.4. Where an agency issues a FONSI and thus relies on an EA for a specific project (and does not prepare an EIS), a reviewing court reviews such a determination under an arbitrary and capricious standard. *Marsh,* 490 U.S. at 377, 109 S.Ct. 1851. In some cases the preparation of an EIS for a broad forest plan may alleviate the

necessity for a full-blown EIS for a particular harvest plan, or the like, within the broader forest plan. *See Newton County Wildlife,* 141 F.3d at 809 (noting that the Regulations encourage an agency to incorporate an EIS for a large action into a subsequent, smaller action within the large action).

*Newton County Wildlife* involved four timber sales within the Ozark National Forest. *Id.* at 806. The Eighth Circuit affirmed Judge William R. Wilson, Jr.'s granting summary judgment on behalf of the Forest Service. *Newton County Wildlife,* 948 F.Supp. 50. In particular, the Court concluded that it was not an abuse of discretion for the Forest Service to not prepare an EIS, but rather to utilize an EA for the proposed timber sales that was tiered to the overall Forest plan EIS. *Newton County Wildlife,* 141 F.3d at 809.

The Court has reviewed the Waldo Project's EA, the DN and FONSI (AR, Part A, Tab 20), plaintiff's Notice of Appeal, and the Appeal Deciding Officer's decision. The Court finds the issue involving the decision not to prepare an EIS analogous to the NEPA issue addressed in *Newton County Wildlife.* Like the case before Judge Wilson, this case involves a timber harvesting plan within the Ozark National Forest Plan, for which the Forest Service prepared a 1986 EIS describing the cumulative impacts of timber harvesting to be experienced over the ten to fifteen year life of the plan. The EA for the Waldo Mountain Project (almost 200 pages including appendices) considered numerous environmental consequences (pages 49 through 114), and eventually the Forest Service concluded that an EIS for this Project was not required. The Appeal Deciding Officer rejected McKinney's contentions that an EIS was required. *See* pages 8 and 9 of her decision. The Court concludes that the decision to not prepare another EIS for the Waldo Project (which was within the scope of the 1986 EIS for the Ozark–St. Francis National Forest) was neither arbitrary nor capricious. *See Sierra Club v. United States Forest Service,* 46 F.3d 835, 840 (8th Cir.

**932**

1995).[2] Accordingly, neither was the Deciding Officer's upholding of that decision. Therefore, the Court will grant summary judgment on behalf of defendants on the issue of whether an EIS was required for the Waldo Mountain Project.

#### b. Other NEPA Issues

 Finally, the Court will summarily address the claims raised in paragraphs 69(b) and (c) of the First Amended Petition for Injunctive Relief. These paragraphs challenge specific issues which plaintiff contends were not adequately addressed in the EA (potential injury to fish and wildlife, potential disruption to recreation, and reforestation concerns). An EA is a "rough-cut, low-budget environmental impact statement designed to show whether a full-fledged environmental impact statement ... is necessary." *Newton County Wildlife*, 141 F.3d at 809 (*quoting Cronin v. United States Dep't of Agriculture*, 919 F.2d 439, 443 (7th Cir.1990)). And "an EA cannot be both concise and brief and provide detailed answers for every question." *Sierra Club*, 46 F.3d 835, 840 (8th Cir.1995). Giving deference to the Forest Service's expertise, the Court is of the opinion that the Waldo Project EA exceeded the minimal "rough-cut, low-budget" threshold which cases have established.

The Court concludes that the Deciding Officer provided a well-reasoned basis for rejecting these challenges and finding that the EA adequately considered plaintiff's NEPA concerns. Thus, having nothing to add to the Deciding Officer's decision, the Court will succinctly conclude that nothing in the administrative chain appears arbitrary or capricious as to the consideration of the remaining NEPA issues. Thus, summary judgment is proper on all the NEPA issues plaintiff raises.

### III. CONCLUSION

The Court therefore grants defendants' motion for summary judgment on all claims

raised in this lawsuit. Accordingly, the Court will not grant any of the relief sought in the petition for injunctive relief. Because the Court is granting summary judgment as to all claims against the original party defendants, the Court will dismiss as moot intervenors' motion for summary judgment. The Court has reviewed the intervenors' submissions which primarily address the merits of plaintiffs' NEPA and NFMA challenges. The Court found these submissions instructive. However, because defendants' motion has been granted in whole, the Court need not separately deal with the arguments advanced in the intervenors' briefs.

IT IS THEREFORE ORDERED that defendants' Motion for Summary Judgment[3] be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that intervenors' Motion for Summary Judgment[4] be, and it is hereby, DISMISSED AS MOOT.

---

2. *See also, Minnesota Public Research Group v. Butz,* 498 F.2d 1314, 1323 n. 29 (8th Cir.1974) (en banc)(noting that if the environmental impacts of timber cutting are considered in an overall EIS that an individual EIS is not required for all subsequent timber sales absent a material change in circumstances).

3. Doc. # 6.

4. Doc. # 14.