HOTELS OF the MARIANAS, INC., d/b/a
Hilton International Guam,
Plaintiff–Appellee,

v.

GOVERNMENT OF GUAM,
Defendant–Appellant.

No. 94–16413.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1995.

Decided Dec. 5, 1995.

Stephen A. Cohen, Assistant Attorney General, Agana, Guam, for defendant-appellant.

Phillip Torres, Gale & Teker, Agana, Guam, for plaintiff-appellee.

Before: HUG, THOMPSON and O'SCANNLAIN, Circuit Judges.

Opinion by Judge THOMPSON.

DAVID R. THOMPSON, Circuit Judge:

The Government of Guam (Guam) appeals the district court's grant of summary judgment in favor of Hotels of the Marianas (Guam Hilton). The dispute is over the amount of rebate due the Guam Hilton on taxes payable to Guam on corporate income for tax years 1986 through 1990.

Pursuant to a statutory scheme designed to promote investment in Guam, the Governor of Guam (Governor) issued Qualifying Certificate 169 (QC 169) to the Guam Hilton. QC 169 provides for a 75% rebate "of corporate income tax" for fifteen years from the effective date of the QC.

The Guam Hilton argues QC 169 entitles it to a rebate on all corporate income tax. Guam's Department of Revenue and Taxation (Department) argues the rebate is limited to "active" income and is not permitted for "passive" income. The Department defines active income as income from the rental of hotel rooms. It defines passive income as income from any activity at the hotel that produces revenue, other than the rental of hotel rooms.

We reject the Department's distinction between active and passive income and hold the plain language of the governing statutes and QC 169 entitle the Guam Hilton to a 75%

rebate of taxes payable on all of its corporate income from all sources of hotel revenue. Accordingly, we affirm the district court's grant of summary judgment.

## FACTS

In 1965, the Guam legislature created the Guam Economic Development Authority (GEDA), a public corporation, to promote investment in Guam. As a means of encouraging investment, GEDA has the authority to recommend the issuance of a Qualifying Certificate (QC) to a qualifying entity that intends to make a statutory minimum investment in Guam. The minimum investment for a hotel is $1 million. 12 Guam Code Ann. § 2403.

After public hearings, the Governor may issue a QC to the entity. A QC permits a qualifying entity to obtain an annual rebate of up to 75% of taxes payable on corporate income for a period not to exceed twenty years.

In 1967, pursuant to GEDA's recommendation, the Governor issued QC 118 to the Guam Hilton. QC 118 granted the Guam Hilton "a corporate income tax rebate of Seventy–Five Percent (75%) of all corporate income tax payable to the Government of Guam for twenty (20) years from the date of issuance...."

QC 118 listed certain conditions the Guam Hilton had to comply with. Under the heading "Nature of Business Subject to Certificate," the Guam Hilton was required to "construct[ ] and operat[e] ... a tourist hotel with all related facilities with a minimum of 150 rooms generally in accordance with [submitted] plans, sketches, models, etc." Other conditions included a commencement date for construction of the hotel, the employment of a certain percentage of United States citizens or permanent residents, and access by GEDA to the hotel premises.

In reliance upon QC 118, the Guam Hilton constructed a 260–room hotel at a cost of approximately $9 million. The hotel opened in 1972. In 1974, the Guam Hilton added 120 rooms at a cost of $4 million.

Until 1980, the Guam Hilton operated at a loss. In 1980, it requested and received a 75% rebate on taxes payable on all corporate income, including income which the Department now asserts is attributable to the hotel's passive activities.

In December 1980, GEDA adopted a policy "to encourage expansion and new construction" in Guam's hotel industry. GEDA sent a letter to the Guam Hilton explaining expansion was necessary to meet a growing demand for hotel rooms. Recognizing the high cost of investment capital and construction at that time, GEDA proposed issuing new QCs or extending current QCs to encourage expansion. To take advantage of this opportunity, a hotel had to invest a minimum of $750,000 in expansion projects.

In response, the Guam Hilton submitted an application for a new QC. It proposed to construct a new tower with 101 hotel rooms at a cost of $7 million. In April 1982, the Governor issued QC 169.

QC 169 granted the Guam Hilton a "Seventy–Five percent (75%) rebate of corporate income tax for a period of fifteen (15) years from the effective date of this Certificate." QC 169 was *conditionally* issued pending the addition of no less than one hundred one (101) more hotel rooms to the existing hotel facility.... The [Guam Hilton had] thirty-six (36) months from the date of issuance of [the] Certificate in which to construct and open such addition...." QC 169 specified the "Nature of business subject to certificate" as "Operation by the [Guam Hilton] of a resort hotel known as *Guam Hilton,* consisting of no less than four hundred seventy-six (476) rooms, with related tourist and recreational facilities." The Guam Hilton complied with QC 169 in 1984 by constructing its new tower with 108 rooms at a cost of $8 million.

When the Guam Hilton filed its 1982 and 1983 income tax returns, it requested a 75% rebate of all taxes payable on corporate income. The Department did not respond to the request until July 1984, by which time the Guam Hilton had completed the tower expansion pursuant to QC 169.

The Department disallowed the Guam Hilton's request for a rebate on all corporate income. The Department explained, "We

feel that the qualifying certificate issued to the [Guam Hilton] is based on operating a first class hotel. Income such as interest, rent, concession, etc. are not part of operating a first class hotel and therefore not subject to a rebate."

The Guam Hilton disputed the Department's interpretation of QC 169, but settled the dispute in September 1984. Under an agreement with the Department, the Guam Hilton did not receive a rebate on interest income received from its bank accounts, but it did receive a rebate on taxes payable on all other corporate income. Although the settlement agreement covered only tax years 1982 and 1983, the Department allowed a rebate on all corporate income, except interest income, for tax years 1984 and 1985 as well.

For tax years 1986 through 1990, the Department disallowed a rebate on income it deemed to be passive income. In a letter dated July 15, 1988, the director of the Department explained:

Only income actively derived from business operations located within the premises stipulated in the qualifying certificate shall be subject to a rebate. Income passively derived from other sources or from activities not specified in the qualifying certificate shall not be subject to a rebate.

In the present lawsuit, the Guam Hilton seeks to recover $545,333 in disallowed rebates for tax years 1986 and 1987 and $534,747 in disallowed rebates for tax years 1988, 1989 and 1990.

Both parties moved for summary judgment. The district court concluded the Department's interpretation was "unreasonable because it [was] contrary to the plain language of the statute, the intent of the Guam legislature, and the intent of GEDA in granting QC 169." The district court granted summary judgment in favor of the Guam Hilton and awarded it the amount it requested in rebates, $1,080,080, plus costs. Guam appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of summary judgment. *War-*

*ren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). In reviewing a grant of summary judgment, we "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law." *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994).

### B. The Department's Position

The Department's active versus passive income interpretation is set forth in a November 1988 memorandum issued by the director of the Department. This memorandum provides:

1. To the extent consistent with the terms of the applicable Q.C., only income *actively* derived from the Q.C. Holder's operation of business located within the premises of the hotel shall be subject to Income Tax Rebate.

2. Corporate Income *passively* derived shall not be subject to Income Tax Rebate. This includes income derived from leasing of all or part of a Q.C. Holder's business operation to another management entity.

3. Dividends, taxable interest and other portfolio income shall not be subject to Income Tax Rebate.

Relying on this interpretation, the Department disallowed rebates on concession and rental income received by the Guam Hilton from third parties who sold goods and provided services on the premises of the hotel. This included rental income from gift shops, travel and tour desks, and car rental agencies. The Department also disallowed rebates on fees and commissions received by the Guam Hilton for services rendered by its own employees on the hotel premises, including foreign exchange services and the transfer of guests to other hotels in the event of overbooking. The Department also disallowed rebates on revenue received by the Guam Hilton from salvage sales by its employees of obsolete or unneeded furniture, and interest income on the hotel's cash deposited in its operating account.

## C. Guam's Statutory Rebate Scheme and QC 169

The Department argues that language distinctions between the 1967 QC 118 and the 1982 QC 169 render QC 169 ambiguous. Because of this ambiguity, it argues, we should defer to its interpretation. We reject this argument because neither the language of the governing statute nor QC 169 is ambiguous.

■ We do not defer to an agency's interpretation of a statute if it is inconsistent with the plain language of the statute. *Public Employees Retirement Sys. v. Betts,* 492 U.S. 158, 171, 109 S.Ct. 2854, 2863–64, 106 L.Ed.2d 134 (1989) (superseded by statute on other grounds). "If the intent of [the enacting legislative body] is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of [the legislature]." *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (9th Cir.1984).

■ To determine whether statutory language is ambiguous, we examine the language of the statute and the "structure of the law as a whole including its object and policy." *Almero v. I.N.S.,* 18 F.3d 757, 760 (9th Cir.1994); *see also Fernandez v. Brock,* 840 F.2d 622, 632 (9th Cir.1988).

■ Guam's statutory rebate provisions do not distinguish between active and passive income. The clear language of the governing statutes provides for a rebate of taxes payable on all corporate income. Moreover, in enacting the statutory rebate scheme, the Guam legislature declared, "It is the intent of the Legislature that rebates of income taxes to qualifying entities ... be rebates on *all* the taxes owed...." 12 Guam Code Ann. § 2416 (emphasis added). In the statutory

section that establishes the corporate income tax rebate, the Guam legislature also provided the rebate shall be on "all" corporate income taxes payable to Guam.[1] *Id.* at § 2415.

The Department's interpretation is contrary to the statutory scheme as a whole. In 1965, the Guam legislature created GEDA to aid in the economic development of Guam and to relieve inadequate housing, health care, and employment problems. *See id.* at § 2103. To encourage investment in Guam, the legislature expressly provided that the rebate provisions should be liberally construed.[2] *Id.* at § 2114. Once a qualifying entity obtains a QC, the rebates recited in a QC cannot be curtailed or limited except as explicitly provided by the legislature. *Id.* at § 2404. The express limitations focus primarily on the revocation of a QC if the entity fails to comply with the conditions of the QC. The Guam Hilton has consistently received certificates stating it is in compliance with QC 169. We agree with the district court that the Guam legislature did not intend to encourage the investment of millions of dollars and then reduce the relied upon rebates by adopting an overly restrictive and unjustified interpretation of the QCs.

Thus, unless a QC is revoked or renegotiated, the statutory provisions ensure a qualifying entity will obtain the rebate intended and bargained for between it and GEDA as set forth in the QC. To determine whether QC 169 limits the allowable rebate, we examine only its language. "[A] Qualifying Certificate shall constitute conclusive evidence of entitlement to the tax rebates and abatements *stated on its face.*" *Id.* (emphasis added).

■ The language of QC 169 does not limit the Guam Hilton's statutory rebate ac-

---

1. In part, section 2415 provides:
   A rebate of up to seventy-five percent (75%) of *all* corporate income tax payable to the government of Guam is hereby established ... for which a Qualifying Certificate may be issued for a period not exceeding a total of twenty (20) consecutive years ... and the percentage of rebate may be made variable so as to permit higher or lower percentages in earlier or later years of the period.

12 Guam Code Ann. § 2415 (emphasis added).

2. Because the Guam legislature explicitly requires liberal construction of the rebate provisions, we reject the Department's argument that we should apply a general rule of construction and strictly construe the rebate provisions against the Guam Hilton pursuant to our decision in *Luben Indus. v. United States,* 707 F.2d 1037, 1041 (9th Cir.1983).

cording to the source of income. QC 169 says nothing about the source of income. It unambiguously grants the Guam Hilton a rebate of 75% of corporate income.

Nor is the language of QC 169 rendered ambiguous when it is compared with the language of former QC 118. QC 118 granted the Guam Hilton "a corporate income tax rebate of Seventy–Five Percent (75%) of all corporate income tax payable to the Government of Guam for twenty (20) years from the date of issuance...." QC 169 provides for a "Seventy–Five percent (75%) rebate of corporate income tax for a period of fifteen (15) years from the effective date of this Certificate."

The Department argues QC 169 is ambiguous and significantly narrower than QC 118 because (1) the term "all" is deleted from QC 169, (2) QC 169 is limited to a term of fifteen rather than twenty years, and (3) in the section entitled "Nature of business subject to certificate," QC 169 requires "Operation by the [Guam Hilton] of a resort hotel...." We reject this argument.

The absence of the adjective "all" does not limit the type of income for which the Guam Hilton may receive a rebate; the shorter expiration period does not affect what type of corporate income is subject to a rebate; and the "nature of business" section of QC 169 expressly provides that the kind of business entitled to the rebate is a "resort hotel" "with related tourist and recreational facilities."

All of the Guam Hilton's sources of revenue for which it sought a rebate fall within this business category. Hotel shops, travel and tour desks, car rentals, foreign exchange and services for hotel guests clearly are "tourist and recreational facilities" of a resort hotel. The sale of obsolete and unneeded furniture and the maintenance of bank accounts to operate the hotel are an integral part of the business of running a hotel. Receiving interest income on the hotel's operating account is as incidental to maintaining the account as the payment of bank service charges.

We conclude the Department's active versus passive income distinction is contrary to the plain language of the statutory rebate scheme and QC 169. The Guam Hilton is entitled to the rebates it sought.

AFFIRMED.