**TUCSON ROD AND GUN CLUB, Plaintiff,**

v.

**John McGEE, Forest Supervisor; Charles Cartwright, Regional Forester; Michael Dombeck, Chief, U.S. Forest Service, Defendants.**

**No. CV97–197 TUC JMR.**

United States District Court,
D. Arizona.

July 9, 1998.

---

David T. Hardy, Tucson, AZ, for Plaintiff.

Ted B. Borek, U.S. Attorney, Tucson, AZ, for Defendant.

### *ORDER*

ROLL, District Judge.

This matter involves the suspension of a special use permit for the operation of a shooting range on property leased from the United States Forest Service. Pending before the Court are Plaintiff's Motion for Partial Summary Judgment as to Counts Three, Eight and Nine, and Defendants' Motion to Dismiss or for Summary Judgment as to all Counts. For the reasons stated below, Defendants are entitled to judgment as to Counts One, Two, Three, Six, Nine, and both Counts Ten. Counts Four, Five, Seven and Eight are dismissed.

#### Factual and Procedural Background

Plaintiff Tucson Rod and Gun Club ("Club") is a not-for-profit Arizona corporation whose primary activity had been the management of a public shooting range near Sabino Canyon. The shooting range was operated pursuant to a special use permit that the Club first obtained in 1952, and which had been renewed annually since that time.

On March 10, 1997, the United States Forest Service issued an order temporarily suspending all shooting and archery activities at the Club. The Club requested an on-the-ground review of the temporary suspension. The review was conducted on March 26, 1997, and the Deputy Regional Forester upheld the suspension in a decision dated April 4, 1997.

Plaintiff filed this action on March 28, 1997, and included a Motion for Preliminary Injunction, requesting that the temporary closure of the Club's range be stayed. Following an evidentiary hearing, this Court issued its Findings of Fact and Conclusions of Law on April 25, 1997, denying the Motion for Preliminary Injunction except as to the archery range.

After the Court's ruling, the parties stipulated to a stay of this action pending administrative appeal. In May 1997, John McGee, Forest Supervisor, affirmed his previous decision to temporarily suspend the permit. In October 1997, the Deputy Regional Forester affirmed the Forest Supervisor's decision to temporarily suspend all shooting activities with the exception of air guns, BB guns, and, in light of the Court's previous Order, continued operation of the archery range.

In December 1997, Plaintiff filed an Amended Complaint which contained some allegations not raised in the administrative appeal. Now pending before the Court are Plaintiff's Motion for Partial Summary Judgment as to Counts Three, Eight and Nine of the Amended Complaint and Defendants' Motion to Dismiss or for Summary Judgment as to all Counts.

### Discussion

### A. Counts One and Three—Plaintiff alleges that the suspension decisions were arbitrary and capricious

■ Counts One and Three allege that the Defendants' initial decision to suspend shooting at the Club, as well as the decisions affirming the emergency suspension, were arbitrary and capricious.

■ A court may reverse an agency's decision as arbitrary or capricious only if the agency: 1) relied on factors Congress did not intend it to consider; 2) entirely failed to consider an important aspect of the problem; 3) offered an explanation that ran counter to the evidence before the agency; or 4) offered an explanation that is so implausible that it could not be ascribed to either a difference in view or agency expertise. *Western Radio Services Co., Inc. v. Espy,* 79 F.3d 896, 900 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996).

Based on the Court's review of the record, the decisions to impose and continue the emergency suspension were based on the undisputed evidence that when the range was in operation, projectiles, including bullets, shot, and arrows, were leaving the permit area. Despite Plaintiff's arguments that the area is cordoned off with warning signs and the Forest Service knew when the permit was initially approved that projectiles would leave the permit area, the Court is convinced that the safety concerns presented by the post–1952 growth in that area involving housing, schools and hiking trails, provide a sufficient basis for the suspension. These safety issues exist despite the Club's obvious efforts to maintain a safe facility. Therefore, the decision to suspend shooting and affirmance of that suspension was not arbitrary or capricious. Furthermore, although the Court concluded that preliminary injunctive relief was appropriate as to the archery range, the overall record supports the Forest Service's safety concerns regarding the archery range also.

Summary judgment in favor of Defendants on Counts One and Three is appropriate.

### B. Counts Two and Six—Plaintiff alleges its right to due process was violated by continuation of suspension of permit without a final decision and without allowing construction of improvements

■ Counts Two and Six both allege that Plaintiff was deprived of due process as a result of suspension of the permit without a final decision and without allowing construction of improvements required to enable the range to become safe. Although it is somewhat unclear, it appears that Count Six is

directed at Defendant John McGee personally.

First, Defendants argue that this Court lacks jurisdiction over these Counts because Plaintiff failed to exhaust its administrative remedies. However, according to 36 C.F.R. § 211.18(b)(9), where the relief sought is an award of monetary damages, decisions are excluded from the administrative appeal requirements. Although it is not clear from the Amended Complaint that compensatory damages are sought in connection with these two claims, based on the representations of Plaintiff's counsel at the motions hearing, the Court will assume that no exhaustion was required.

In reviewing the merits of Counts Two and Six, the Court finds that because (1) the rights conveyed to Plaintiff through the permit were rights to occupy and use the land for specified purposes and (2) the permit is both revocable and terminable, it is unlikely that Plaintiff has a constitutionally protected property interest in the special use permit. *See United States v. 5.96 Acres of Land,* 593 F.2d 884, 889–90 (9th Cir.1979); *Paulina Lake Historic Cabin Owners Ass'n v. U.S.D.A. Forest Service,* 577 F.Supp. 1188, 1194 n.2 (D.Or.1983). Furthermore, even assuming Plaintiff has such a property interest, Plaintiff has been afforded sufficient due process through the various levels of administrative appeals such that no due process rights have been violated. Therefore Defendants are entitled to summary judgment on Counts Two and Six.

■ In any event, as to Defendant John McGee, the Court finds that he is entitled to qualified immunity as a federal employee because he did not violate "clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). McGee acted within the Forest Service and Administrative Procedure Act guidelines and did not deprive Plaintiff of any due process or other constitutional rights, but instead acted on reasonable concerns for public safety.

**C. Count Four—Plaintiff alleges that the suspension violated the National Environmental Policy Act ("NEPA") because no environmental analysis was done prior to suspension**

■ Dismissal of this Count is appropriate because Plaintiff fails to state a claim upon which relief may be granted. Administrative enforcement actions such as the subject temporary suspension, do not require performance of a NEPA analysis pursuant to 42 U.S.C. § 4332(C) because such suspension is not a "major Federal action" as defined in 40 C.F.R. § 1508.18.

**D. Count Five—Plaintiff alleges that 5 U.S.C. § 558 was violated by Defendants' public statements that the Plaintiff's range is unsafe**

■ This claim apparently results from the release to the press by Defendants of its initial decision and the report by Glen Shumsky. Copies of these documents were also apparently posted in public libraries and on the Forest Service web page.

According to the Department of Agriculture Reorganization Act of 1994:

Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against: (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e).

Upon review of the administrative appeal, the Court finds no argument similar to the one in this Count and it is, therefore, appropriate to dismiss this Count based upon Plaintiff's failure to exhaust its administrative remedies.

**E. Count Seven—Plaintiff alleges that decisions to contract with experts violated the Federal Advisory Committee Act**

In Count Seven, Plaintiff alleges that Defendants violated the Federal Advisory Com-

mittee Act ("FACA"), 5 U.S.C.App. 2, by contracting with various experts for reports on the safety of the Club. These experts included Glen Shumsky, and a team of experts, Ken Buster, Brian Danielson, and Richard Whiting. Again, however, Plaintiff failed to exhaust its administrative remedies as to this claim by not raising the issue in the administrative appeal.

 Even assuming exhaustion is not necessary, the Court finds that this Count should be dismissed as to the report by Glen Shumsky because FACA does not apply to government contractors. *See* H.R. Conf. Rep. No. 1403 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3508, 3509; H.R.Rep. No. 1017 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3491, 3494.

 Furthermore, even if there was a technical violation of FACA in the report prepared by Buster, Whiting and Danielson, the use of that report should not be enjoined. The report has already been completed, and Plaintiff has had, and will continue to have, the opportunity to present further information prior to the final agency decision. *See Seattle Audubon Soc'y v. Lyons,* 871 F.Supp. 1291, 1309 (W.D.Wash.1994), *aff'd sub nom. Seattle Audubon Soc'y v. Moseley,* 80 F.3d 1401 (9th Cir.1996) (FACA can and should be enforced by injunctive relief while a committee is still functioning, but once it has served its purpose, courts do not generally invalidate the agency action notwithstanding earlier FACA violations).

Accordingly, Count Seven must be dismissed.

**F. Count Eight—Plaintiff alleges that Defendants' refusal to authorize construction of improvements was arbitrary and capricious**

 Although Plaintiff alleges that the Defendants' refusal to authorize construction

of improvements was arbitrary and capricious, as a prerequisite for construction to occur, a NEPA analysis must be completed.[1] NEPA analysis has not yet been completed as to the proposed construction. Without the final NEPA analysis, the agency action is not "final" and therefore is not subject to judicial review under the Administrative Procedure Act ("APA").[2] Therefore, Count Eight must be dismissed.

**G. Count Nine—Plaintiff alleges that the suspension of the permit without reasonable opportunity to remedy violated 5 U.S.C. § 558**

 Plaintiff has moved for summary judgment on this claim, arguing that the suspension of the permit was ordered without providing Plaintiff an opportunity to comply with any requirements.

5 U.S.C. § 558(c) provides, in part:

> Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
>
> (1) notice by the agency in writing of the facts or conduct which may warrant the action; and
>
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

The phrase "[e]xcept in cases...in which public...safety requires otherwise" authorizes the action taken. For that reason, Defendants are entitled to summary judgment. Despite the obvious efforts by the Club to provide for safe utilization of the facilities, Forest Supervisor McGee determined that there were significant safety concerns for

---

**1.** Construction involves affirmative action taken concerning the premises. This is obviously distinguishable from the mere cessation of activity on the premises, which generally requires no NEPA analysis, as it would not typically be considered a "major Federal action" pursuant to 40 C.F.R. § 1508.18. For these reasons, Plaintiff's claims as to Count Four (alleging that a NEPA analysis was required before the Club's activities could be suspended) and Count Eight (alleging

that construction should be allowed to go forward in the absence of a NEPA analysis) must both be dismissed.

**2.** The APA states that: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

nearby residents, forest visitors, and children attending nearby schools. This determination is factually supported by the record and warranted the emergency suspension. Further, a required on-the-ground review of the suspension was conducted, resulting in the Deputy Regional Forester affirming the immediate action. That review was then affirmed on appeal.

 Plaintiff argues that this Court must not rely on the administrative appeal decision by the Regional Forester because he concluded that § 558 did not apply here.[3] However, purely legal questions are to be reviewed de novo by this Court. *See Wagner v. National Transp., Safety Bd.*, 86 F.3d 928, 930 (9th Cir.1996); *Howard v. Federal Aviation Admin.*, 17 F.3d 1213, 1215 (9th Cir. 1994). Further, this Court is not to "defer to an agency's interpretation of a statute if it is inconsistent with the plain language of the statute." *Hotels of the Marianas, Inc. v. Government of Guam*, 71 F.3d 1455 (9th Cir.1995). Upon review of the statute, the Court finds that § 558 does apply to this situation because the special use permit held by Plaintiff constitutes a "license" for purposes of § 558 pursuant to 5 U.S.C. § 551(8),[4] and § 558 authorized the action taken.

Finally, as previously noted, Plaintiff was afforded notice. As to compliance, however, Plaintiff was not permitted to "achieve compliance" by engaging in construction because such action prior to completion of a NEPA analysis is prohibited.

Considering the applicable statute and the relevant facts regarding safety and environmental concerns, Defendants are entitled to summary judgment on this Count.

**H. Counts Ten(1) and Ten(2)—Plaintiff alleges that it should have been accorded the benefits of a noncommercial group user**

 The Forest Service issues two types of permits for the use of land, depending upon whether it is for commercial or noncommercial use. Plaintiff argues that it should be considered a noncommercial user of the land, pursuant to 36 C.F.R. § 251.51. That regulation defines a commercial use as one where an entry or participation fee is charged or if the primary purpose of the use is the sale of a good or service, regardless of whether the use is intended to produce a profit. Anything not qualifying as commercial is noncommercial. The primary difference between the two permits for purposes of this lawsuit is the fee paid by the permit holder to the Forest Service.[5]

There are sufficient indicators that Plaintiff is a commercial permit holder. They include: 1) Plaintiff charges an annual membership fee; 2) until after the suspension was imposed, Plaintiff also charged non-members a daily fee for use of the range; 3) Plaintiff seeks income from its operation which covers operational and maintenance expenses; 4) Plaintiff has never applied for nor been granted a noncommercial group use permit; and 5) Plaintiff's use is atypical of noncommercial uses.

The Court finds Plaintiff holds a commercial permit. Defendants are entitled to summary judgment on both Counts Ten.

### Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, filed December 22, 1997, is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss or for Summary

---

**3.** The Regional Forester's decision states, *inter alia:* "A Forest Service Special Use Authorization (in this instance, an annual special use permit) … is not a license for purposes of 5 U.S.C. § 558. The immediate temporary suspension of the permit is not a sanction, and does not fall within the requirements of 5 U.S.C. § 558."

**4.** 5 U.S.C. § 551(8) defines license as including "the whole or a part of an agency permit, certificate, approval, registration, charter, member-

ship, statutory exemption or other form of permission".

**5.** During the motions hearing, the parties discussed whether Plaintiff is current in paying its fees to the Forest Service. The parties agreed that Plaintiff has paid its dues through 1996. The Forest Service has not yet issued its invoices for 1997 or 1998.

Judgment, filed May 1, 1998, is **GRANTED.** **Summary judgment** is granted to Defendants with regard to Counts One, Two, Three, Six, Nine and both Counts Ten. Counts Four, Five, Seven, and Eight are **dismissed.** This case is **DISMISSED** and **JUDGMENT** shall be entered accordingly.