Hugh R. KERN, Leigh Ann Lipscomb, and the Oregon Natural Resources Council, Plaintiffs,

v.

UNITED STATES BUREAU OF LAND MANAGEMENT, Defendant,

Douglas Timber Operators, Herbert Lumber Co., and Lone Rock Timber Co., Intervenor–Defendants.

No. 98–6063–HO.

United States District Court, D. Oregon.

Jan. 6, 1999.

---

Daniel J. Stotter, Bahr & Stotter Law Offices, Eugene, OR, for Plaintiffs.

Mark C. Rutzick, Portland, OR, for Defendants Douglas Timber Operators, Herbert Lumber Co., Lone Rock Timber Co., Inc.

Thomas C. Lee, U.S. Attorneys Office, Portland, OR, Roger W. Nesbit, Special Asst U.S. Attorney, Office of the Regional Solicitor, U.S. Dept. of Interior, Portland, OR, for Defendant Bureau of Land Management.

## ORDER

HOGAN, District Judge.

Plaintiffs bring this action under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* (NEPA), the Federal Land Policy Management Act, 43 U.S.C. § 1701 *et seq.* (FLPMA), and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (APA), challenging defendant the Bureau of Land Management's (BLM) alleged failure to meet its procedural and substantive duties required by law. Plaintiffs allege that the BLM failed to adequately perform environmental review procedures regarding the environmental impacts posed by the introduction and spread of Phytophthora lateralis (PL), a pathogenic root disease fatal to stands of Port Orford cedar (POC). Specifically, plaintiffs challenge the alleged failure of the BLM to adequately consider the impact of the spread PL to uninfected POC stands in issuing decisions implementing (1) the Resource Management Plan (RMP) for the Coos Bay district of the BLM; (2) the Sandy–Remote analysis area environmental assessment and its finding of no significant impact (FONSI), and its associated land management decisions, including the Frenchie Creek thinning timber sale, the Crazy 8's timber sale, and the North Fork Chetco timber replacement sale, all of which tier to the Sandy–Remote environmental assessment (EA); and (3) the Washington Mutual Bank reciprocal right-of-way agreement and its associated FONSI.

Plaintiffs additionally challenge the BLM's alleged failure to prepare a Coos Bay district transportation plan pursuant to the Coos Bay RMP and the alleged failure to perform other duties required by the RMP and the FLPMA to protect POC from PL such as preventing adverse impacts posed by off-highway vehicles (OHV), and maintaining a current inventory of PL infected POC. Plaintiffs thus assert that these alleged actions and failures to act constitute agency actions and omissions in violation of the APA. *See* 5 U.S.C. § 706(2)(A) (arbitrary and capricious, an abuse of discretion, and not in accordance with the law); 5 U.S.C. § 706(1) (action unreasonably delayed or unlawfully withheld). Presently before the court is defendant's motion (# 45) for summary judgment, plaintiffs' motion (# 40) for summary judgment, and plaintiff's motion (# 61) to join a party.

## STANDARDS

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) mandates the entry of summary judgment against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.* at 320, 106 S.Ct. 2548. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Taylor v. List,* 880 F.2d 1040 (9th Cir.1989).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Co. of North America,* 638 F.2d 136, 140 (9th Cir.1981).

### BACKGROUND

POC is a valuable ecological and cultural component of forest ecosystems in southwest Oregon and northwest California. PL is a pathogenic root rot fungus, fatal to infected POC. This fungus releases spores that are spread via roots, water, and moist infested soils. Human and animal activities facilitate the movement of the fungus over longer distances. Chronic fungus infection can occur in areas where trees have been killed in the past, and seedlings from natural regeneration may become infected

as well. Activities such as road construction and maintenance, off-road vehicle use, and timber harvest in infested areas, and surface water movement present a risk of spreading the fungus.

The BLM completed POC management guidelines in October of 1994. These guidelines contain management objectives, implementation strategies, measures for timber sale and service contracts to minimize spread of the fungus, and specifications for equipment washing and cleaning. The guidelines provide lists of fungus control strategies and timber sale and service contract mitigation measures to be applied after site-specific NEPA analysis. Several BLM RMPs include references to the POC management guidelines in their environmental impact statements (EIS).

Plaintiffs previously challenged the BLM's alleged failure in the POC guidelines to consider alternatives of prohibiting logging and road building in uninfected watersheds to prevent the spread of PL. The Ninth Circuit dismissed the challenge because the guidelines themselves neither proposed any site-specific activity nor called for specific action directly impacting the physical environment. *Northcoast Environmental Center v. Glickman,* 136 F.3d 660, 670 (9th Cir.1998). However, the court did note that the BLM would be unable to shield their POC program from NEPA review by tiering any site-specific EIS's to the broader POC guidelines where the guidelines themselves have not been subject to NEPA review and that judicial estoppel would prevent the BLM from arguing that it has no further duty to consider their POC guidelines when site-specific programs are challenged. *Id.*

The BLM has since taken site-specific action in the Coos Bay district involving timber sales and a reciprocal right-of-way agreement. Plaintiff's now challenge these actions of the BLM as inadequate.

### DISCUSSION

Defendant moves for summary judgment on several procedural grounds, con-

tending that: (1) plaintiffs Kern and Lipscomb have no standing to sue at all and ONRC has no standing to challenge the reciprocal right-of-way; (2) the complaint fails to state a claim against the Coos Bay RMP; (3) Plaintiff ONRC has waived all rights to challenge the site-specific decisions of the BLM; (4) plaintiffs Kern and Lipscomb have waived any right to challenge the Upper Sandy timber sale or the Washington Mutual right-of-way decision; and (5) plaintiffs have failed to join a necessary party in the challenge to the Washington Mutual right-of-way decision. Defendant also moves for summary judgment as to the merits on several grounds, contending that: (1) the BLM did not violate NEPA in its consideration of the impacts of the Coos Bay RMP relative to the spread of PL; (2) the factual and legal underpinnings of plaintiffs' alleged violations of the FLPMA are erroneous; (3) the BLM did consider the impacts on POC in the site-specific NEPA documents; and (4) the BLM's reciprocal right-of-way agreement does not violate the FLPMA.

Plaintiffs move for summary judgment contending that: (1) The Sandy–Remote analysis area EA and its associated timber sales violate NEPA by failing to adequately address POC management; (2) the Washington Mutual right-of-way violates NEPA; (3) the Coos Bay RMP and its EIS violate NEPA by failing to adequately consider POC management; (4) the Washington Mutual right-of-way violates the FLPMA; (5) the BLM has violated the FLPMA by failing to adequately inventory POC and the spread of PL; (6) the BLM has failed to timely develop an appropriate district wide management plan as required by the Coos Bay RMP; (7) the BLM has violated the FLPMA by failing to conform with RMP requirements to evaluate OHV resource damage; (8) the BLM has violated the APA by failing to comply with POC guidelines; and (9) the BLM has violated the FLPMA by failing to prevent impairment of public lands and environmental degradation of POC.

This discussion will first focus on whether Washington Mutual is a necessary party

with regard to the reciprocal right-of-way agreement. The discussion will next focus on defendant's procedural challenges to plaintiffs' claims. And, finally, the discussion will focus on the merits of the claims.

### A. Joinder of Washington Mutual

Defendant argues that because the right-of-way agreement is now in effect, any suit to invalidate the agreement requires the joinder of Washington Mutual bank as it holds legal rights under the agreement. However, for the reasons stated below, summary judgment will be granted in favor of defendant with respect to the Washington Mutual right-of-way agreement. Therefore, whether Washington Mutual is a necessary party need not be reached. Thus, plaintiffs' motion (# 61) to join Washington Mutual is denied.

### B. Standing

To have standing to sue, a plaintiff must establish that he has sustained an injury in fact. This requirement means that a plaintiff must show that he personally has suffered some actual or threatened injury as a result of the alleged illegal conduct. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). A plaintiff must establish that his alleged injury can be fairly traced to the challenged action and that such injury is likely to be redressed by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

Additionally, a plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Furthermore, standing may not be based on a generalized grievance shared in substantially equal measure by all or a large class of citizens. *Id.*

#### 1. Plaintiffs Kern and Lipscomb

Defendant notes that the individual plaintiffs have moved out of the area to the other side of the country and argue that in so doing, they have removed themselves

from the position of being among the injured by the BLM actions. *See Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (the party seeking review must himself be among the injured). However, the affidavits of plaintiffs Kern and Lipscomb demonstrate that they are avid recreationalists and natural history enthusiasts who regularly travel to the Coos Bay BLM district and to the particular action areas currently challenged. Such is sufficient to demonstrate a particularized injury as a result of alleged violations with respect to the subject property.

Defendant next notes that prior to the Washington Mutual right-of-way agreement, the public did not have access to the BLM lands that are accessed by the subject road.[1] Therefore, BLM argues, plaintiffs obtained their ability to use and enjoy the area by virtue of the challenged action and should they prevail, would not be able to use and enjoy the affected area. However, in addition to stating that they now use and enjoy the area, plaintiffs also note that injuries to POC in the affected area have an impact on adjacent lands previously accessible to them. Therefore, plaintiffs have standing to challenge the right-of-way agreement.

*2. Plaintiff ONRC*

■ Defendant contends there is no allegation that ONRC members have used the area affected by the Washington Mutual right-of-way. However, plaintiffs Kern and Lipscomb are members of ONRC. ONRC thus has representational standing to challenge any alleged violations. *See, e.g., No GWEN Alliance of Lane County, Inc. v. Aldridge,* 855 F.2d 1380, 1383 (9th Cir.1988).

*C. General Claims Against the Coos Bay RMP*

■ Defendants contend that counts I and II of plaintiffs complaint involve statu-

tory violations directed at the Coos Bay RMP and do not bear any relationship to any specific activity being conducted by the BLM. Count I essentially challenges a district wide RMP regarding proposed strategies to control the spread of PL and coordination of such strategies with other agencies without focusing on site-specific control mechanisms. Count II essentially raises FLPMA challenges to the general RMP claiming that BLM failed to carry out various duties called for by FLPMA or the RMP itself. Again, these challenges are not focused on any project that has a direct impact on the environment. To the extent that plaintiffs mount a general challenge to the RMP, such a challenge is not ripe for review. Unless plan level directives are to go forward without any additional consideration which would result in imminent concrete injury, a challenge to the plan is not ripe. *See Ohio Forestry Association Inc. v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 1673, 140 L.Ed.2d 921 (1998). Such is the case here. BLM must conduct an environmental review before any site-specific projects take effect. As the *Ohio Forestry* Court noted,

"The case-by-case approach … is understandably frustrating to an organization such as respondent, which has as its objective across-the-board protection of our Nation's … forests …. But this is the traditional, and remains the normal, mode of operation of the courts."

*Id.* at 1671 (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 894, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).) Therefore, defendant is granted summary judgment on counts I and II. However, to the extent that the RMP plays a role in site-specific decisions challenged elsewhere in the complaint, the court will consider the adequacy of the RMP to the extent that it plays a causal role with respect to the alleged harm. *See id.* at 1670.

---

1. Prior to the agreement the roads were private and neither the public nor BLM had any right to traverse them.

*D. Waiver*

*1. ONRC and the Site–Specific Decisions*

■ Defendant argues that ONRC failed to raise any of the issues administratively that it seeks to vindicate here. ONRC only submitted a single page comment on the Sandy–Remote EA and did not raise the issues now raised in plaintiffs' complaint. As the Supreme Court has noted:

> Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

*United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952). *See also, Duncanson Harrelson Co. v. Director, Office of Workers' Compensation Programs,* 644 F.2d 827, 832 (9th Cir.1981) (in the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time).

■ Of course an agency should be allowed to consider objections to its actions prior to the action being challenged on court. But the objection need not be raised by every possible litigant. So long as the agency properly had the opportunity to consider the objection, it has no reason to challenge the bringing of such objection before a court by another party. *Cf. Northwest Environmental Defense Center v. Bonneville Power Administration,* 117 F.3d 1520, 1534–35 (9th Cir.1997) (no requirement of participation in an agency proceeding as a condition precedent to seeking judicial review of an agency decision). Because challenges to the agency actions presented in the instant litigation were in fact raised before the agency during the administrative process, plaintiffs should not be held to have waived any right to present such issues before the court. *See* Affidavit of Hugh Kern and

Leigh Ann Lipscomb (# 43) at pp. 3–5 (outlining various challenges to the actions presented in this case).

*2. Plaintiffs Kern and Lipscomb and waiver of the Upper Sandy Timber Sale and Washington Mutual Right–of–Way Issues*

Defendant argues that the individual plaintiffs failed to protest and appeal the BLM decisions regarding the upper Sandy timber sale or the Washington Mutual right-of-way and have thus waived any right to challenge these actions. However, the affidavit of Kern and Lipscomb demonstrates that protests and appeals to these agency actions were in fact made. *See id.* at ¶¶ 8, 14. Defendant fails to explain how such protests were insufficient.

*E. Coos Bay RMP*

As noted above, the alleged challenge to the Coos Bay RMP in counts I and II are general in nature and do not go to any site-specific projects. As such, plaintiffs general claims with respect to the alleged inadequacies of the RMP should be dismissed. Plaintiffs' argument here is that the RMP fails to adequately consider POC management and conservation issues by unlawfully tiering to the POC management guidelines and failing to take the requisite hard look at the mitigation measures. However, as noted above, it is at the site-specific level or where BLM actions have a direct impact on the environment that BLM is required to comply with the NEPA requirements regarding the mitigation measures. *See Northcoast Environmental Center,* 136 F.3d at 670. The BLM's consideration of the measures in this regard will be analyzed with respect to the site-specific timber projects tiered to the Sandy–Remote EA. Contrary to plaintiff's assertions, BLM will not be able to evade its obligations with respect to mitigation measures because each project having a direct impact will have to comply with NEPA and FLPMA.

*F. Sandy–Remote EA*

Plaintiffs argue that the Sandy–Remote analysis area EA (AR/CD Exs. 4, 5), which

serves as the NEPA analysis document for the BLM land management actions in the area including the Frenchie Creek timber sale, the Sandy Change timber sale, the Upper Sandy timber sale, the Sand Fly timber sale, the Belieus Bothers timber sale, the Crazy 8's timber sale, and the North Fork Chetco timber sale, fails to adequately consider the impacts of the land management decisions on the introduction and spread of PL to stands of POC. Indeed the original EA for the area expressly excluded this subject from the NEPA analysis. *See* AR/CD Ex 4, p. 024 (issues identified but eliminated from analysis include POC root rot disease). As noted above, the Ninth Circuit stated that the BLM may not argue that it has no further duty to consider POC management policies when site-specific programs are challenged. *Northcoast Environmental Center*, 136 F.3d at 670. Therefore, BLM has a duty to evaluate and consider, in accordance with NEPA procedures, its POC conservation strategy of employing POC management guidelines at the site-specific level. In this case, the agency may not simply "tier" to the POC guidelines as such were not subject to the NEPA review process. *See id.*

Defendant argues that plaintiffs' complaint only attacks four timber sales in the Sandy–Remote area and that they thus are not entitled to challenge additional timber sales. However, plaintiffs' complaint, while only naming four specific timber sales, does challenge the EA itself and all of the timber decisions tiered to it. *See* Complaint at p. 2 (challenges the Sandy–

Remote EA and its associated actions); at p. 9 (Sandy–Remote EA proposes multiple timber sale contract activities within the area); at pp. 15–16 (failure in EA regarding POC impacts with respect to activities permitted by EA and other past, present, and future actions by BLM). Therefore, plaintiffs may go forward with respect to any actions that will be taken pursuant to the EA.

■ Defendant next argues that the NEPA claims with respect to the original Sandy–Remote EA are now moot as it has issued a revised EA for the area. *See* Defendant's Ex. 104(# 68).[2] Although defendant also argues that the original EA adequately addressed management of the spread of PL to POC stands, the issue was excluded from analysis in the original EA. *See* AR/CD at 024.[3] Plaintiffs argue that the revised EA did not apply to eight of the challenged timber sales. It is true that eight sales had already been sold under the original EA. *See* Second Declaration of Neal R. Middlebrook (# 67) at ¶ 8. (sales that have already been sold under the original EA and analysis include: Upper Sandy, Sand Fly, Sandy Change, Frenchie Creek thinning, Small Change, Belieus Brothers, Crazy 8's replacement volume modification, and North Chetco replacement volume modification). However, the POC evaluation contained within the revised EA applied inventory data, analysis, and strategies for management for *all* the listed timber sales in the Sandy–Remote analysis area. *See id.* (emphasis added). The BLM concluded that none of the timber sales sold under the original EA required changes to be in congruence with the POC analysis con-

---

2. Plaintiffs did file comments with respect to the revised EA. *See* Defendant's Ex. 107(# 71).

3. Furthermore, defendant attempts to utilize the POC guidelines, which were never subject to NEPA review, by asserting that the EA did not tier to the guidelines but merely referenced them as shorthand way of describing a set of potential mitigation measures. However, NEPA requires more than a shorthand reference to consider environmental impacts

of an agency's mitigation measures. *See, e.g., Neighbors of Cuddy Mountain v. United States Forest Service*, 137 F.3d 1372, 1380 (9th Cir. 1998) (Perfunctory description of mitigation measures is inconsistent with the hard look required under NEPA. Mitigation must be discussed in sufficient detail to ensure that environmental consequences have been fairly evaluated.). To the extent that the Coos Bay RMP played a role with respect to the timber sales, it suffers from the same infirmity.

tained in the revised EA. *See id.* Indeed, the BLM noted that prior to issuing the revised EA there had been no irreversible and irretrievable commitments of resources involved in the timber sales. *See* 42 U.S.C. § 4332(2)(C) (required considerations for major agency action). Although sales were awarded prior to the revised EA, had the BLM determined in the revised EA that allowing activities associated with the sales to go through would significantly impact POC by spreading PL infestation, the BLM could have halted such activity. *See City of Tenakee Springs v. Clough,* 915 F.2d 1308, 1313 (9th Cir.1990) (NEPA requires consideration of the potential impact of an action before the action takes place). The revised EA served the purpose of providing consideration of potential impacts to POC by the proposed timber harvests before the an irreversible and irretrievable commitment of resources took place.

Plaintiffs argue that the BLM has failed to consider cumulative impacts to stands of POC of this action and other actions on BLM lands, adjacent private lands, and lands administered by other agencies.

■ The revised EA did contain a discussion of the impacts of the proposed actions on the spread of PL. *See* Defendant's Ex. 104 at Section S (POC evaluation). The BLM found that POC occurs along roads and highways, but that due to POC being a prolific seeder, there was a zero chance of POC becoming extinct due to the disease. *Id.* Inventories of POC are discussed and the BLM concludes that the vast majority of roads in the area are infected with PL. BLM then discusses mitigation measure including cutting all green POC within 50 feet of roads, postponing hauling over uninfected roads until work is complete, hauling over dirt roads only in the summer or rocking the roads, and closing or gating dirt spur roads during the wet season while timber contracts are

in effect. These measures correspond to some of the mitigation measure contained in the POC guidelines. The BLM summarizes the cumulative effects by noting that it is proposing harvesting treatments leaving approximately 47,111 green POC on BLM lands in low risk sites and, with green POC on private lands (low risk sites) in the analysis area, a total of 122,634 green POC trees will remain. *Id.* at p. 59. The BLM thus concluded under this alternative that proposed management actions in the Sandy–Remote area are not likely to affect the continued existence of POC. *Id.* Defendant thus finds no significant impact due to the proposed actions. BLM thus considered the cumulative impacts for the entire range of POC within the Sandy–Remote watershed.[4]

Plaintiffs also argue that the BLM had to consider the efficacy of the POC guidelines. While it is true that simply listing mitigation measures is insufficient, the BLM went beyond that. The BLM discussed the efficacy and full environmental consequences of the measures. *See, e.g.,* Defendant's Ex. 104, Section S at pp. 51–52, 55–56 (moderate concern for PL infection after the mitigation measures are applied, used risk assessment matrix). *See Friends of Endangered Species v. Jantzen,* 760 F.2d 976, 987 (9th Cir.1985) (so long as significant measures are undertaken to "mitigate the project's effects," they need not completely compensate for adverse environmental impacts). The BLM relied on its own experts in determining that there would be no significant impact with the mitigation measures employed and this court gives deference to that conclusion.

Plaintiffs further argue that BLM has failed to comply with POC guidelines at the site-specific level. However, the revised EA specifically adopts applicable measures from the guidelines and discussed their impact at the site-specific level.[5]

---

4. The BLM notes that PL is very site-specific. *See, e.g.,* Ex. 104 at p. 53. PL is waterborne and thus confining the analysis to the entire

watershed is an appropriate analysis of the cumulative impacts.

5. Plaintiffs specifically point to one measure

Therefore, the BLM has complied with its NEPA obligations regarding the impacts of the proposed actions with respect to the Sandy–Remote timber sales on the spread of PL to POC stands.

### G. Washington Mutual Right-of-way

■ The right-of-way agreement between Washington Mutual and the BLM allows each party to use each other's existing roads across each other's lands for access to their own lands. The agreement involves about 3,700 acres of Washington Mutual lands and about 1,900 acres of public lands in Curry County, Oregon. Under the agreement, prior to any new road construction, a specific environmental analysis will be conducted. No new roads have yet been built or contemplated. All that has occurred is a conveyance of legal rights between the parties.

The BLM, nevertheless, prepared an EA to describe any possible impacts to the lands. Plaintiffs argue that the agreement fails to provide any discussion or analysis of POC conservation issues addressing the spread of PL. BLM acknowledges that the exercise of the legal rights exchange would require further analysis of the impacts to POC, AR/CD Ex. 10, at pp. 66–67, but that obtaining access to the lands had to occur before it could determine if there were any POC resources to protect. AR/WM Ex. 8, at p. 27. Thus, BLM has chosen to withhold analysis of this issue until a project is actually contemplated under the agreement.

BLM also noted that the existing roads subject to the agreement do not contain POC. *See* AR/WM Ex. 8 at p. 27. Plaintiff Kern states that he has seen PL infected POC along a timber hauling road. However, this does not demonstrate a threat of spread of PL to uninfected sites. Furthermore, defendant has no duty to conduct an analysis with respect to the right-of-way. *See* 57 Fed.Reg. 10913, 10919 (acquisition

of existing rights-of-way excluded from NEPA analysis).

■ Plaintiffs cite 43 U.S.C. § 1763 for the proposition that BLM must consider the POC issue before issuing the right of way. However, the statute deals with designating right-of-way corridors, not individual rights-of-way on roads already in existence. Even if 43 U.S.C. § 1763 did apply in this instance, it specifically states that "[a]ny existing transportation and utility corridors may be designated as transportation and utility corridors pursuant to this subsection without any further review." As noted above, the only action proposed in the agreement is the exchange of legal rights to use each party's *existing* roads.

This simply is not a major federal action subject to NEPA and requiring consideration of environmental impacts. *Cf. National Wildlife Federation v. Espy*, 45 F.3d 1337, 1343 (9th Cir.1995) (acquisition or conveyance of legal rights alone does not entail environmental impacts); *United States v. 0.95 Acres of Land*, 994 F.2d 696 (9th Cir.1993) (transfer of legal title is not a major federal action significantly affecting environment). When a project is actually implemented under the agreement, that is the time the agency must consider potential impacts to the environment including impacts to POC.

### H. FLPMA claims Regarding Inventory, Road Management Plans, OHV Monitoring, and Impairment to Public Lands

Plaintiff alleges that the BLM has violated the FLPMA by failing to adequately prepare or maintain a current road management plan for the Coos Bay district as required by the Coos Bay RMP, by failing to adequately prepare or maintain a current inventory of POC stands infected by PL, and by failing to inventory areas where off highway vehicle activities have caused resource harm. Plaintiffs also al-

---

that requires harvesting timber in uninfected areas prior to harvesting in infected areas. However, this measure applies to timber sales containing infected and uninfected areas.

Plaintiffs do not demonstrate that this measure is applicable to the specific timber sales at issue.

lege that the BLM has violated FLPMA by failing to prevent impairment of public lands and environmental degradation to POC. These allegations are contained in count II of plaintiffs' complaint and, as noted above, plaintiffs may not bring a general challenge to the RMP without focusing on specific action of the agency that has a direct impact on the environment. Plaintiffs have challenged alleged inadequacies in mitigating PL damage to POC in the context of specific timber sales and such has been addressed above. The allegations in count II generally do not point to any activities that will be implemented without further consideration. *See Ohio Forestry,* 118 S.Ct. at 1670.

Indeed, the BLM is in the process of undertaking inventory of POC PL infection. *See* AR/CD Ex. 6. at 577 (although no systematic survey has been done to date to identify all locations nor severity of the disease, visual observations show infected locations); AR/SF Ex. 2, at p. 8 (completed road inventory for presence of POC and PL, aerial photography inventory process underway).

The BLM has prepared the western Oregon transportation management plan. AR/CD Ex. 7. This plan will be each district's final transportation management plan upon designation of arterial, collector, local and land management highway roads and completion of transportation management objectives that recommend specific management of individual roads. AR/CD Ex 7, p. 804. To date transportation management plans have been completed on 80% of the road segments managed by BLM in the Coos Bay district. Declaration of Neal Middlebrook (# 67) at ¶ 3.[6] To the extent that plaintiffs fail to focus these claims on site-specific agency action, such is not actionable as noted above.

Failure to monitor OHV uses would state a claim that could have a direct im-

pact on the environment. However, BLM notes that with respect to the Sandy–Remote area, no OHV has been observed. Defendant's Ex. 104(# 68) at p. 55. The BLM also notes that OHV is prohibited with respect to nearly the entire district except for existing roads.[7] There is little reason to monitor a use which is prohibited. Plaintiffs do not point to any prohibited OHV use taking place that has an adverse impact on the environment. A failure to conduct a district wide inventory thus is not actionable. The RMP requires the BLM to prepare an implementation plan for OHV use designations and annual reviews of OHV designations to protect resource values and resolve user conflicts. The large majority of the area is not designated for OHV use, thus no review is necessary for most of the Coos Bay district.[8]

As to Plaintiffs' general allegation that the BLM has failed to use and observe the principles of multiple use and sustained yield and has failed to manage public lands without permanent impairment of the productivity of the lands and quality of the environment, such must be addressed in the site-specific context. The site-specific timber sales and right-of-way agreement have been analyzed for such failure.

*I. APA and POC Guidelines*

Plaintiffs argue that the BLM has failed to conform with the express requirements of the POC guidelines. As noted above, such must be addressed to agency action that has a direct impact on the environment. To the extent the guidelines have an impact at the site-specific level, they have been discussed.

*CONCLUSION*

For the reasons stated above, defendant's motion (# 45) for summary judg-

---

**6.** Such action has resulted in specific agency action such as road closures and thus constitute an action with direct environmental impact. However, plaintiff does not challenge such actions.

**7.** OHV use on existing roads has no more impact than non offroad vehicles.

**8.** Defendants do note that about 80 acres of the district is open to OHV use. Plaintiffs do not show that such use is not reviewed.

ment is granted and plaintiffs' motion (#40) for summary judgment is denied. All other pending motions are denied as moot, and this action is dismissed.