**CHATTOOGA RIVER WATERSHED COALITION, Plaintiff,**

v.

**UNITED STATES FOREST SERVICE, and David Jensen, District Ranger, Defendants.**

**No. Civ. 2:98CV173–WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

Feb. 2, 2000.

Frank W. Virgin, Slaughter & Virgin, Atlanta, GA, Ray Vaughan, phv, Leigh Haynie, phv, WildLaw, Montgomery, AL, for Chattooga River Watershed Coalition, plaintiff.

Julia B. Anderson, Office of United States Attorney, Atlanta, GA, for The United States Forest Service, defendant.

Julia B. Anderson, (See above), for David Jensen, District Ranger, defendant.

### ORDER

O'KELLEY, Senior District Judge.

This case is before the court for consideration of the plaintiff Chattooga River Watershed Coalition's motion for summary judgment [14–1]. On March 22, 1998, the court conducted a telephone conference with the parties. The parties agreed that no discovery was necessary and that the issues could be decided on the briefs. As a result, the court approved the Joint Preliminary Planning Report and Scheduling Order, directed the defendants to file the administrative record, and set a briefing schedule for the parties. Order of March 22, 1999. Because the administrative record has been filed and the parties have submitted their briefs, this matter is now ripe for consideration.

### I. *FACTS*

Plaintiff brought the instant action for declaratory judgment and injunctive relief, challenging the actions of the defendants in approving a timber sale for Management Area 16, Compartment 32, Stand 6 of the Chattahoochee National Forest,[1] which would affect twenty-nine acres and result in a harvest of 225,000 board feet. This timber sale is known as the Hickory Bottoms Timber Sale ("Timber Sale"). In August of 1996, the District Ranger proposed the Timber Sale and published a scoping notice. AR Vol. 2, Tab 7 at 28, 30; AR Vol. 2, Tab 8. In response, members of the public, including the plaintiff, submitted comments, mostly opposing the Timber Sale. AR Vol. 2, Tabs 10–18. The Forest Service answered the public's comments, *Id.* Tab 25, and the District Ranger issued a decision memo on July 17, 1998, approving the Timber Sale. The District Ranger determined that the Timber Sale fell within at least two Categorical Exclusions, which meant that no environmental impact statement or environmental assessment

---

1. The Chattahoochee and Oconee National Forests are divided into seventeen management areas. For timber management purposes, the areas are further subdivided into compartments (about 1000–1500 acres), and then are further subdivided into stands (about 10–40 acres).

would need to be prepared. AR Vol. 2, Tab 26 at 90–91. After unsuccessfully pursuing an appeal of the decision, *Id.* Tabs 36 (Appeal), 41 (Appeal Decision), plaintiff filed the instant action requesting review of the Forest Service's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

## II. *STANDARD OF REVIEW*

"Under the APA, agency actions should be reversed if they are found to be 'arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Sierra Club v. Martin,* 168 F.3d 1, 3 (11th Cir.1999) (reviewing Forest Service's approval of timber sales); 5 U.S.C. § 706(2)(A). The scope of review under the arbitrary and capricious standard is narrow, and the court cannot substitute its own judgment for that of the agency. Instead, the court must determine whether a rational connection exists between the facts found and the choice made. *Atlanta Gas Light Co. v. F.E.R.C.,* 140 F.3d 1392, 1397 (11th Cir.1998). However, agency actions are deemed as arbitrary and capricious when the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

## III. *DISCUSSION*

Plaintiff asserts four bases supporting its claim for injunctive relief: (1) the failure to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, and National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 et seq., and failure to obtain, maintain, and disclose accurate data; (2) the illegal conversion of hardwood stands to pine plantations; (3) the failure to consider extraordinary circumstances, particularly the conversion of native hardwood trees to pine and the fact that the timber sale would affect an inventoried roadless area; and (4) the failure to complete an environmental assessment and/or environmental impact statement.

### A. Illegal Conversion of Hardwood Stands to Pine Plantations

Plaintiff contends that a result of the Timber Sale will be the conversion of the hardwood stand to a pine plantation in violation of 16 U.S.C. § 1604(g)(3)(B) and the Land and Resource Management Plan ("LRMP") for the Chattahochee–Oconee National Forests. Specifically, plaintiff asserts that the defendants have miscategorized Stand 6 as a pine plantation when hardwoods make up 42–73% of the stand. The defendants' regeneration of Stand 6 into a pine plantation, then, would result in the conversion of hardwoods to pine. Defendants argue that Stand 6 is properly categorized as a pine plantation and that no conversion will occur because they intend to regenerate Stand 6 "to a mixture of trees that is approximately the same as the current forest community." AR Vol. 2, Tab 26 at 90.

Section 1604(g)(3)(B) of Title 16, U.S.C., requires the Secretary of Agriculture to establish regulations, which to the degree practicable, "preserve the diversity of tree species similar to that existing in the region controlled by the plan." The LRMP for this region also provides:

On the Chattahochee, stands will be regenerated to the designated management type, but only to the extent of the long range management objective of not more than 40 percent of the Forest in pine management types and at least 60 percent of the Forest in hardwood management types. In order to achieve this objective, *hardwood management type sites will be regenerated to hardwoods* and pine management type sites may be regenerated to pine or hardwood.

AR Vol. 3, Tab 1 at 4–33 (emphasis added). Thus, if Stand 6 is properly a hardwood management site, it would be improper for the defendants to regenerate the site as a pine plantation.

Both sides have presented evidence supporting their position. Specifically, plaintiff relies on its own on-site surveys, which indicate that Stand 6 is 42–73% hardwood. AR Vol. 2, Tab 36 at 134. In addition, plaintiff points to the Forest Service's Ecological Classification Mapping and Inventory for the Chattooga Watershed, published in 1995, which states that pitch pine only occurs on the upper slopes and ridges of Stand 6. AR Vol. 2, Tab 36 at 134. Defendants, on the other hand, point to the data from the Forest Service's Continuous Inventory of Stand Condition database, which demonstrates that 78% of Stand 6 is pine, while only 22% is hardwood. AR Vol. 2, Tab 1 at 1. In addition, defendants rely on inventories taken by District Ranger and silviculturist Steve Cole in 1996 and 1998. The 1996 inventory shows that of three plots taken, two were dominated by pine trees. AR Vol. 2, Tab 16. The 1998 inventory is slightly different. Of the six plots taken, three were dominated by pitch pines, one was categorized as pitch pine and white pine, and two were dominated by pitch pine and chestnut oaks. AR Vol. 2, Tab 39.

"When the agency is confronted with opposing views among specialists, it must be given the discretion to rely on the reasonable opinions of its own experts, even if a court finds other views more persuasive." *Florida Manufactured Housing Ass'n. Inc. v. Cisneros,* 53 F.3d 1565, 1572 (11th Cir.1995) (citing *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)). Other courts have accorded similar deference to an agency's technical expertise. *See Greenpeace Action v. Franklin,* 14 F.3d 1324, 1332 (9th Cir. 1992) (applying arbitrary and capricious standard to resolve factual dispute requiring "high level of technical expertise"); *Sierra Club v. Marita,* 46 F.3d 606, 621 (7th Cir.1995) ("The [Forest] Service is entitled to use its own methodology, unless it is irrational."); *Sierra Club v. Espy,* 38 F.3d 792, 799 (5th Cir.1994) (applying arbitrary and capricious standard to Forest Service's decision to use even-aged management technique); *Huls America Inc. v. Browner,* 83 F.3d 445, 452 (D.C.Cir.1996) ("In addition, we will give an extreme degree of deference to the agency when it 'is evaluating scientific data within its technical expertise.' ").

■ With these principles in mind, the court finds that the defendants acted well within their discretion in categorizing Stand 6 as dominated by pine. The defendants were entitled to rely on the opinion of its expert, silviculturist Steve Cole. Indeed, plaintiff does not point to deficiencies in the methodology used by the defendants and Cole; rather, plaintiff relies on the opinion of its expert and states that the defendants are wrong. In light of these opposing views and plaintiff's failure to show why Cole's opinion was not reasonable, defendants were entitled to rely on the opinion of their own expert. *Cisneros,* 53 F.3d at 1572.

Moreover, the court declines to find that the defendants acted arbitrarily and capriciously because the defendants took the opinion of plaintiff's expert and the Forest Service's own Ecological Classification Mapping and Inventory for the Chattooga Watershed into account in concluding that Stand 6 is predominately pine. AR Vol. 2, Tab 26 at 92; AR Vol. 2, Tab 41 at 147–48. In addition, the court declines to find that any conversion will take place because the defendants plan to regenerate Stand 6 to the same mixture of trees that is currently located in the forest. AR Vol. 2, Tab 26 at 90.

### B. Failure to Consider Extraordinary Circumstances

Plaintiff asserts that two extraordinary circumstances exist which preclude the Timber Sale until an environmental impact

statement or environmental assessment is done on the property: (1) the conversion of native hardwood trees to pine and (2) the fact that Stand 6 is included in an inventory of roadless areas. The Forest Service Environmental Handbook ("FSH") provides that:

1. A proposed action may be categorically excluded from documentation in an environmental impact statement (EIS) or environmental assessment (EA) only if the proposed action:

    b. Is within a category listed in sec. 31.1b or 31.2; and there are no extraordinary circumstances related to the proposed action.

FSH 30.3(1)(b), AR Vol. 1, Tab 3 at 43208. Extraordinary circumstances include inventoried roadless areas. FSH 30.3(2)(e), AR Vol. 1, Tab 3 at 43208.

Because the court has determined that no conversion from hardwood to pine will take place, the court will focus on the inventoried roadless area issue. Defendants contend that plaintiff has failed to exhaust administrative remedies. Plaintiff admits that it did not raise this issue before the Forest Service. Instead, plaintiff relies on the interested party comments of Rene Voss to show that the Forest Service had the opportunity to consider this objection. *See Kern v. United States Bureau of Land Management*, 38 F.Supp.2d 1174 (D.Or.1999). Pursuant to 36 C.F.R. § 215.13(e), Voss submitted a letter stating her opposition to the Timber Sale because an extraordinary circumstance exists warranting an environmental assessment. Pl. Ex. A; Defs.Ex. A.

Section 6912(e) of Title 7, U.S.C., requires a person to exhaust administrative appeal procedures established by the Secretary of Agriculture before bringing an action against the Secretary, the Department of Agriculture, or any agency, office, officer, or employee of the Department. *See also* 36 C.F.R. § 215.20 (requiring exhaustion of administrative remedies); *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d

90, 94 (2d Cir.), *cert. denied,* 525 U.S. 1016, 119 S.Ct. 539, 142 L.Ed.2d 448 (1998); *Gregson v. U.S. Forestry Service,* 19 F.Supp.2d 925, 929 (E.D.Ark.1998); *Tucson Rod & Gun Club v. McGee,* 25 F.Supp.2d 1025, 1029 (D.Ariz.1998). To appeal a Forest Service decision, a person must submit a written appeal within the 45 day appeal filing period specified in the public notice. 36 C.F.R. § 215.13(a). Interested parties are allowed to submit written comments to the Appeal Reviewing Officer within 15 days after the close of the appeal filing period. 36 C.F.R. § 215.13(e). In this case, plaintiff timely filed its appeal on September 8, 1998. *See* AR Vol. 2, Tab 41 at 146. Voss subsequently submitted her interested party comments on September 23, 1998. Pl.Ex. A; Defs.Ex. A.

No courts have directly addressed the question of whether one may rely on interested third party comments submitted to a federal agency in order to exhaust administrative remedies. However, in *Kern v. United States Bureau of Land Management,* 38 F.Supp.2d 1174, 1180 (D.Or.1999), the district court held that a party suing the Bureau of Land Management exhausted administrative remedies. The plaintiff had not presented the issue on appeal before the agency, but another person had. The court held that "[s]o long as the agency properly had the opportunity to consider the objection, it has no reason to challenge the bringing of such objection before a court by another party." *Id.*

■ *Kern* is distinguishable because the plaintiffs were suing the Bureau of Land Management, which is an agency of the Department of the Interior, and the district court did not consider any statute mandating exhaustion of administrative remedies. In contrast, with respect to the Department of Agriculture, section 212(e) of the U.S.D.A. Reorganization Act of 1994 provides that a person must exhaust all administrative appeal procedures before "*the person* may bring an action in a court

of competent jurisdiction." 7 U.S.C. § 6912(e) (emphasis added). Thus, under the plain language of § 6912(e), the person who files suit must have exhausted administrative appeal procedures. In the case sub judice, it is clear that plaintiff did not pursue the inventoried roadless area issue in its appeal of the Forest Service's decision to go forward with the Timber Sale. AR Vol. 2, Tab 36. Plaintiff cannot rely on the comments of an interested third party to fulfill its duty under § 6912 to exhaust administrative remedies. Accordingly, the court concludes that plaintiff failed to exhaust administrative remedies with respect to the inventoried roadless area issue. Because the court has held that no conversion of Stand 6 will take place and the court is precluded from considering the inventoried roadless area issue, the court finds that plaintiff has failed to show the existence of extraordinary circumstances requiring an environmental assessment or environmental impact statement.

C. Failure to Conduct an Environmental Assessment and/or Environmental Impact Statement

Plaintiff asserts that under the NEPA an environmental assessment or environmental impact statement is required before a Timber Sale goes forward. Plaintiff contends that the Timber Sale will have a significant effect on the environment because of the conversion of hardwoods to pine. Because the court has determined that no such conversion will take place, plaintiff's argument fails.

D. Failure to Comply with NEPA and the NFMA and the Failure to Disclose Accurate Data

Finally, plaintiff contends that the defendants violated the NEPA and the NFMA by failing to produce an environmental impact statement or environmental assessment before authorizing the Timber Sale. Plaintiff reiterates its argument that the defendants have failed to consider the significant issues presented by the Timber Sale, namely, the conversion of hardwoods to pine and the presence of an inventoried roadless area. In addition, plaintiff contends that the defendants have failed to consider whether the clearcutting would be the "optimum method ... to meet the objectives of the relevant land management plan." 16 U.S.C. § 1604(g)(3)(F). Because the court has already determined that no conversion from hardwoods to pine will occur and plaintiff has failed to exhaust administrative remedies with respect to the inventoried roadless area issue, the court will focus on whether defendants have met the requirements of § 1604(g)(3)(F).

Section 1604(g)(3)(F) requires the Secretary of Agriculture to issue specific guidelines for land management plans to

insure that clearcutting, seed tree cutting, shelterwood cutting, and other cuts designed to regenerate an even-aged stand of timber will be used as a cutting method on National Forest system lands only where—(i) for clearcutting it is determined to be the optimum method, and for other cuts it is determined to be appropriate, to meet the objectives and requirements of the relevant land management plan.

Clearcutting, seed tree cutting, and shelterwood cutting are different types of even-aged management techniques. *See Sierra Club v. Espy*, 38 F.3d 792, 795 (5th Cir.1994) (explaining even-aged management techniques). "Before choosing to clearcut a portion of the forest, the Forest Service must find that clearcutting is the 'optimum method' for achieving the objectives and requirements of the LRMP." *Id.* (citing § 1604(g)(3)(F)(i)).

██ In the case sub judice, the defendants do not propose that Stand 6 will be clearcut. Instead, trees will be harvested using a modified seed-tree method of cutting, which will reserve both pine and hardwoods at higher densities than in a traditional seedtree harvest. AR Vol. 2, Tab 26 at 89. Because Stand 6 will not be clearcut, the court rules that defendants

are not required to show that its harvest method is the "optimum method" for achieving the objectives and requirements of the LRMP.

## IV.  CONCLUSION

Plaintiff's motion for summary judgment [14–1] is **DENIED.**  The court declines to issue an injunction preventing defendants from pursuing any further action on the Timber Sale project.  Plaintiff's request for reasonable costs and attorney's fees is likewise denied.  As the parties have agreed to resolve this matter on the briefs, this order closes the case.  The clerk is **DIRECTED** to enter judgment for the defendants.